JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
CHRISTOPHER BURTON
Assistant United States Attorney
Nevada Bar No. 12940
District of Nevada
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Christopher.Burton4@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ETHAN ELLIOT ERHARDT,<br><br>    Defendant. | Case No. 2:19-cr-00249-JCM-VCF<br><br>**Government's Response to Defendant's Motion for Early Termination of Supervised Release (ECF No. 80)** |

Certification:  This Response is timely.

**I. Introduction**

Defendant Ethan Elliot Erhardt was sentenced, in part, to three years supervised release after being found guilty of one count of illegal acquisition of a firearm. After just over one year, he seeks early termination. This Court should deny Erhardt's request under 18 U.S.C. 3583(e)(1) after considerations of the factors listed in 18 U.S.C. 3553(a).

///

///

///

///

///

## II. Statement of Facts and Procedural History

In February 2019, Erhardt acted as a straw purchaser for ten separate Fabrique Nationale Herstal ("FN") M249S rifles, which are semi-automatic versions of the FN M249 SAW machine gun used by the military, similar to that depicted below.[1]



Erhardt paid for the ten firearms using approximately $88,000 that had been provided to him by another individual, Boris Trgovcevic.[2] When making the purchase, Erhardt lied on the ATF Form 4473 by stating that he was purchasing the firearms for himself, when he was actually purchasing the firearms on behalf of Trgovcevic, who would in turn sell them to a third party. The ATF intervened as Erhardt was loading the firearms into Trgovcevic's white cargo van, identified themselves, and seized the firearms. According to text messages between Erhardt and Trgovcevic, the firearms were destined for Mexico.

The investigation also revealed that Erhardt was in the business of selling firearms without a license and law enforcement purchased two KA9-style firearms from him. During the controlled purchase, Erhardt claimed that his company, Erhardt Industries, was a government/Department of Defense contractor and that he frequently had "demos" available after gun exhibitions. When asked whether he could obtain

---

[1] Erhardt had completed one prior purchase of ten FN rifles and another prior purchase for ten Barrett M82A1 .50BMG rifles. Those 20 firearms were never recovered.

[2] Trgovcevic has never appeared on the Superseding Indictment in this case and his arrest warrant remains pending.

more guns, Erhardt claimed that he was planning on "making more," but that they were "back ordered" with more "orders coming in." He also claimed to be building a new manufacturing facility in Arizona.[3]

Several days after ATF agents seized the illegally obtained firearms, Erhardt called ATF to lodge a complaint about the seizure. During this phone call, Erhardt repeatedly described himself as a "government contractor" who provided weapons to law enforcement and even stated he may need to contact his "friends in Washington" and try to remove the agents from their job. When pressed, however, Erhardt admitted he did not have an active Federal Firearms License or any current eligibility to bid on government contracts.

Erhardt then filed a police report with Henderson Police Department in March 2019 alleging he was robbed at gunpoint and his firearms were stolen from him. When HPD officers learned Erhardt's claim involved an ATF investigation, ATF agents were called out to the scene.

Following this event, Erhardt continued to contact ATF and make allegations against the investigating agents. Ultimately, his harassment turned to threats, including threats of violence, and he was charged with stalking in Nevada state court. He subsequently pleaded guilty to that offense in June 2020, receiving a sentence of time served.

---

[3] Erhardt's claims that he had a DOD contract and was building a manufacturing facility in Arizona were false. While he was, for a time, eligible to bid on government contracts, investigators found no evidence he ever successfully received a contract and at the time of the sale, his eligibility to bid had lapsed. It appears Erhardt has continued to make claims that he was a government contractor in his new business ventures. *See* https://www.aeymarketing.com/the-team (Accessed March 2, 2023).

Following his federal prison sentence, Erhardt began supervised release on January 14, 2022. In September 2022, he requested to transfer supervision to Minnesota and his request was granted. Undersigned spoke with Erhardt's current supervising officer in Minnesota, and he confirmed Erhardt has been in compliance with the terms of supervised release for the last five months.[4]

### III. Points and Authorities

The Court may "terminate a term of supervised release and discharge the defendant . . . at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making a termination decision, the Court must consider most of the 3553(a) factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed training, medical, or other treatment; (3) the kinds of sentences established in the Guidelines for this type of offense; (4) any Sentencing Commission pertinent policy statement; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution. 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).

The Court should also consider the nine factors set forth in the Administrative Office of the U.S. Court's *Guide to Judiciary Policy*, Vol. 8, Part E, "Supervision of Federal

---

[4] Because Erhardt transferred his supervision to Minnesota in September 2022, the supervising officer in Minnesota could only speak directly to the last five months.

Offenders" (Monograph 109) section 380.10 (2012) (*hereinafter* "Probation Monograph 109"). *See, generally*, *Hollingsworth v. Perry*, 558 U.S. 183 (2010) (policy conclusions of the Judicial Conference are not binding but "at the very least are entitled to respectful consideration"). These factors include: (1) stable community reintegration; (2) progressive strides toward supervision objectives and in compliance with all conditions of supervision; (3) no aggravated role in the offense of conviction, particularly large drug or fraud offenses; (4) no history of violence; (5) no recent arrests or convictions; (6) no recent evidence of alcohol or drug abuse; (7) no recent psychiatric episodes; (8) no identifiable risk to the safety of any identifiable victim; and (9) no identifiable risk to public safety based on the Risk Prediction Index. *Id.*

Similar to sentencing decisions, when deciding whether to grant a request for early termination of supervision, a district court must explain its decision. *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014). The Court's "explanation must be sufficiently detailed to permit 'meaningful' appellate review, and it must state the court's reasons for rejecting 'nonfrivolous' arguments." *Id.* The Court, however, "need not give an elaborate explanation of its reasons for accepting or rejecting [the] arguments, and it need not tick off each of the relevant § 3553(a) factors to show that it has considered them." *Id.* at 821-22 (internal quotation marks omitted). "The expansive phrases 'conduct of the defendant' and 'interest of justice' in section 3583(e)(1) make clear that a district court enjoys discretion to consider a wide range of circumstances when considering whether to grant early termination." *United States v. Hawatmeh*, No. LA CR 08-00385-VBF-3, 2014 WL 11970544, at *1 (C.D. Cal. Sept. 19, 2014) (some internal quotation marks omitted).

A defendant carries the burden of demonstrating that "he is entitled to the rarely-granted remedy of early termination of supervised release." *United States v. Emmett*, 749

F.3d 817, 824 (9th Cir. 2014) (Nguyen, J., dissenting on other grounds); *see also United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). A defendant carries this burden by "showing that the balance of the applicable section 3553(a) factors has changed and now counsel[s] a shorter term of supervised release than those factors did at the time of sentencing." *Hawatmeh*, No. LA CR 08-00385-VBF-3, 2014 WL 11970544, at *5 (concluding "[a]s a matter of law . . . the defendant's compliance with the terms of supervised release alone cannot constitute a basis for terminating supervision early"). Courts "generally h[o]ld that something more than compliance with the terms of [supervision] is required to justify early termination [pursuant to 18 U.S.C. § 3583(e)(1)]. Early termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." *Id.* at *5.

      The Court should deny Erhardt's motion for early termination because he has not carried his burden to demonstrate that the balance of the applicable 3553(a) factors has changed since the time of sentencing such that a significantly shorter term of supervised release is now sufficient but not greater than necessary to serve the goals of sentencing.

      Erhardt was convicted of illegal acquisition of a firearm for purchasing ten FN rifles for $88,000 that were actually being purchased by another individual. But for the ATF investigation, these firearms were destined for Mexico. Although straw purchasing numerous firearms is always concerning as it helps to proliferate gun violence and the firearms black market, it is especially concerning here that Erhardt was attempting to traffic civilian versions of military-style weapons across international borders.

      Additionally, although Erhardt should be commended for his compliance on supervised release over the course of the last 13 months, his behavior prior to being charged in this case, especially toward law enforcement officers, is concerning. When confronted

with his illegal actions, Erhardt lied to investigating agents and, when that was unsuccessful, attempted to file a false police report. He then began to harass and directly threaten the investigating agents, resulting in a State stalking charge to which he pleaded guilty. These actions place Erhardt apart from the vast majority of straw purchasing defendants and should give the Court pause as it considers the "rarely-granted remedy of early termination of supervised release." *See Emmett*, 749 F.3d at 824.

### IV.  Conclusion

Based upon the above, and all the facts and circumstances in this case, the Court should deny Erhardt's motion.

Respectfully submitted this 2nd day of March, 2023.

JASON M. FRIERSON
United States Attorney

*s/ Christopher Burton*
CHRISTOPHER BURTON
Assistant United States Attorney